UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                            :

**HUMPHRIES QUAYE**,
                                            :

                     Petitioner,      :

                                            :     **MEMORANDUM DECISION AND**
                                           **ORDER**
             – against –              :
                                            :     19-CV-3097 (AMD)

**WILLIAM A. LEE**,
                                            :

                       Respondent.     :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

        The *pro se* petitioner, currently incarcerated at Eastern New York Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner was convicted

after a jury trial of first-degree robbery and sentenced as a predicate felon to a determinate prison

term of 18 years, with five years of post-release supervision.  He argues that the evidence at trial

was insufficient to prove his guilt, that the trial court should have suppressed physical evidence,

that he was denied the right to be present at a material stage of the trial, and that his sentence was

excessive.  For the reasons explained below, the petition is denied in its entirety.

**BACKGROUND**[1]

        On July 29, 2011, the petitioner and Jerrod Drumgoole, who was armed with a gun,

robbed Eric Lavenburg at 415 Albemarle Road in Brooklyn, New York, while Lavenburg was

visiting his in-laws.  (Trial ("T.") Tr. 77.)  Within minutes, Lavenburg flagged down police

officers Jason Vasquez and Jason Santana, who drove him around the area until they saw the

---

[1] I summarize the facts in the light most favorable to the verdict because the petitioner was convicted.  *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).

petitioner and Drumgoole sitting in a parked car.  The officers arrested both men and found

Lavenburg's wallet, keys, and cell phone in the car, along with Drumgoole's gun.

I.      **Severance**

On February 17, 2012, the petitioner filed a motion for separate trials.  (ECF No. 10-6 at

153, 155.)  On April 19, 2012, Judge Miriam Cyrulnik denied the petitioner's motion because

there was no "disparity among the defenses" that "threaten[ed] the core" of his case, "such that

the guarantee of a fair trial for each individual defendant would be compromised."  *People v.*

*Quaye*, No. 06492/2011, 2012 WL 13153108 (N.Y. Sup. Ct. Apr. 19, 2012).  However, the court

granted the petitioner's motion that he and Drumgoole be tried before separate juries.  (*See* ECF

No. 10-6 at 157, 164-67; T. Tr. 140; T. Tr. 399.)

II.     *Mapp/Dunaway/Wade* **Hearing**

Prior to trial, the petitioner moved to suppress evidence that the police found in

Drumgoole's car—the victim's wallet, keys and cell phone, as well as a loaded gun.  Judge

William Harrington held a *Mapp/Dunaway/Wade* hearing, at which Officer Vasquez and Officer

Elvis Merizalde testified.  (Hr'g Tr. 1-75.)

Officer Vasquez testified that on July 29, 2011, he and Officer Santana were on patrol

near 415 Albemarle Road when two men crossed the road in front of their car and walked down

East 4th Street.  (Hr'g Tr. 6, 7, 16, 26, 32-33.)  Shortly thereafter, Eric Lavenburg banged on the

hood of their car and told the officers that two men had just mugged him.  (Hr'g Tr. 6, 7, 15, 29,

30-31.)  Lavenburg got in the car and told them that he thought the robbers had gone down East

4th Street (Hr'g Tr. 7, 15-16, 30, 32), which was where Officer Vasquez had seen the two men

earlier.  (Hr'g Tr. 32.)  When they saw a man walking on East 4th Street, the officers drove

alongside him, passing a parked car in which the petitioner and Drumgoole were sitting.  (Hr'g

Tr. 7, 34-35.)  Lavenburg said that the man on the sidewalk was not one of the men who robbed him.  (*Id.*)

Officer Vasquez then backed up next to Drumgoole's car.  (Hr'g Tr. 8-10, 35.)  The petitioner was leaning back in the front passenger seat and periodically poked his head up.  (Hr'g Tr. 11, 17, 37-38.)  Lavenburg told Officer Vasquez, "I think that's them."  (Hr'g Tr. 8, 19.)  Drumgoole started to drive away (Hr'g Tr. 10), so Officer Vasquez blocked his car, and both officers walked to Drumgoole's car.  (Hr'g Tr. 10, 11.)  Officer Vasquez walked towards the passenger side, and Officer Santana walked towards the driver's side.  (*Id.*)  The petitioner put his hand between the seat and the door "as if he was trying to grab something or drop something."  (Hr'g Tr. 11, 37-39.)  Officer Vasquez opened the passenger door, took the petitioner out of the car and saw a cell phone wedged between the door and the passenger side seat, where the petitioner's hand had been.  (Hr'g Tr. 12, 39-41.)  Officer Vasquez handcuffed the petitioner and took the cell phone.  (Hr'g Tr. 12.)  Meanwhile, Officer Santana took Drumgoole out of the car and was struggling to handcuff him.  (Hr'g Tr. 12-14, 22-23.)  When Officer Vasquez went to help Officer Santana arrest Drumgoole, the petitioner, still handcuffed, ran away toward Church Avenue.  (Hr'g Tr. 42, 60-61.)

Officer Merizalde and his sergeant received a radio report than an officer needed assistance, and arrived at the scene.  (Hr'g Tr. 49, 54.)  Officer Santana handcuffed Drumgoole (*id.*), and Officer Vasquez caught up to the petitioner and arrested him.  (Hr'g Tr. 60-62.)  Officer Merizalde saw a wallet and keys on the driver's side floor (Hr'g Tr. 50, 57), as well as a small black gun under the driver's seat between the seat and the door.  (Hr'g Tr. 50-51.)  Officer Merizalde picked up the wallet and keys and gave them to Officer Vasquez; another officer

recovered the gun from Drumgoole's car.  (Hr'g Tr. 52-53.)  The wallet, keys and cell phone belonged to Lavenburg.  (Hr'g Tr. 14, 41-43, 52.)

In a written decision, Judge Harrington denied the motion to suppress, finding that there was "legally sufficient probable cause" because the victim identified the defendants (ECF No. 10-6 at 3); Lavenburg "initiated contact" with the police officers, "set the direction that the canvass should take," and "indicated" that the first individual he saw was not one of the robbers, which "tends to establish that Officer Vasquez did not say or do anything to prompt" Lavenburg to make an identification.  (*Id.* at 4.)  Lavenburg's identification of the petitioner and Drumgoole "occurred within blocks of the crime scene and just minutes after the crime," and was "spontaneous and not the product of suggestiveness."  (*Id.*)  Moreover, the physical evidence— the wallet, keys, cell phone and gun—was in plain view on the floor on the car.  (*Id.* at 3.)

## III.  Voir Dire and Trial

### a.  Voir Dire

As noted above, the case was tried before two juries simultaneously; one jury heard the case against the petitioner, and the other heard the case against Drumgoole.  Jury selection began on September 18, 2013.  (Voir Dire Tr. 1-194.)  Judge Harrington explained the process to the potential jurors:

> In this case we will be using a somewhat unusual procedure in that we will be selecting two juries.  One for each of the defendants.  And this procedure is going to be employed because it's the most efficient way to try the case under the circumstances, and you should draw no other conclusions from it.  Mr. Drumgoole is not present with his attorney at this time because his jury has already been selected and I expect the case will actually proceed with opening statements and testimony on Monday so at that point Mr. Drumgoole and his attorney will be present in the courtroom.

(Voir Dire Tr. 30.)

**a. The Prosecution's Case**

The prosecution called 12 witnesses, including Eric Lavenburg. Before Lavenburg's

testimony, Judge Harrington reviewed the procedure for cross-examination outside the presence

of the juries:

> So my understanding [is that] counsel have agreed that the cross-examination of
> the complaining witness should be conducted separately? So Mr. Lavenburg . . .
> would testify on direct before both juries. Then I'll dismiss the [petitioner's] jury
> which is the yellow jury and the cross and the redirect and any subsequent recross
> and sur-redirect can be conducted only before the [petitioner's] jury. Then I'll
> dismiss the [petitioner's] jury, bring the Drumgoole jury in and have cross-
> examination as to that jury.

(T. Tr. 73.) Neither defense attorney objected to the procedure. (*Id.* at 73-74.)

i. *Lavenburg's Testimony Before Both Juries*

Lavenburg testified that around 6:50 p.m. on July 29, 2011, he, his wife and son visited

his in-laws at their apartment on 415 Albemarle Road. (T. Tr. 77.)[2] At one point, Lavenburg

left the apartment to retrieve some tools from his car. (*Id.*) He returned to the building, and as

he walked to his in-laws' apartment, Drumgoole stopped him (T. Tr. 78-79), pointed a "small

black handgun" at him, and said, "Cash, where's your cash?" (T. Tr. 79, 81.) The petitioner,

who was "somewhat taller" than Drumgoole, was standing behind Drumgoole to his left. (T. Tr.

79-80; *see also* T. Tr. 82-83.) The hallway was well-lit and nothing obscured Lavenburg's view

of either robber's face. (T. Tr. 79-85.)

Lavenburg took his wallet from his pocket and started removing the cash. (T. Tr. 80.)

Drumgoole said, "No, the whole thing," and Lavenburg "stuffed the cash back in and [] handed

him the whole wallet." (T. Tr. 80.) Then the petitioner, facing Lavenburg, "with two hands

reached into [Lavenburg's] pockets and took [his] phone out of one pocket and [his] keys out of

---

[2] Both juries were present for the direct examination. (T. Tr. 75.)

the other pocket." (T. Tr. 80, 84.)  Meanwhile, Drumgoole pointed his gun "right at" Lavenburg's chest.  (T. Tr. 84.)  As the petitioner and Drumgoole turned to leave, Lavenburg asked if he could have his driver's license, and Drumgoole said that he would leave it in the lobby.  (T. Tr. 80.)  Drumgoole and the petitioner walked down the stairs, and "two or three" seconds later, Lavenburg followed them.  (T. Tr. 81, 93.)  His license was not in the lobby, so Lavenburg "just followed" the men out the apartment building door and saw them "walking down East 4th Street." (*Id.*)

"By chance," Lavenburg saw a police car "in front of the building," moving "at kind of slow speed," so he "jumped into the street" and ran after the police car shouting "police" "at the top of [his] lungs."  (T. Tr. 95.)  When the officers stopped, Lavenburg told them that he had just been mugged, and got into the back of the police car.  (*Id.*; *see also* T. Tr. 96.)  One of the officers made a U-turn about halfway down East 4th Street and stopped "right next" to a parked car.  (*Id.*)  Lavenburg saw the petitioner in the passenger seat and Drumgoole in the driver's seat, and "immediately" told the police, "That's them." (T. Tr. 96, 100.)  The petitioner was "kind of slouching down" in a seat that was "slightly reclined."  (T. Tr. 103.)  The officers got out of the car, their guns drawn, and handcuffed the petitioner.  (T. Tr. 104.)

As the officers struggled to handcuff Drumgoole (*id.*), the petitioner, still handcuffed, ran down East 4th Street towards Church Avenue.  (T. Tr. 105-06.)  Lavenburg helped Officer Santana subdue Drumgoole, and saw a small black handgun in Drumgoole's car that he recognized as the one Drumgoole used in the robbery.  (T. Tr. 108.)  The police gave him his cell phone and returned his wallet and keys at the precinct.  (T. Tr. 108.)

      ii.    *Lavenburg's Testimony Before Drumgoole's Jury*

When the direct examination was concluded, Judge Harrington excused both juries.  (T.

Tr. 114.)  The following colloquy took place:

> THE COURT: At this time [the petitioner] can be excused until his jury is brought
> back in and we will have cross-examination by Mr. Sheinberg with [Drumgoole's]
> jury.
>
> MR. SHEINBERG: Very good.  (Whereupon, [the petitioner] was hereby excused.)
>
> COURT OFFICER: The witness is entering.
>
> THE COURT: We're ready for [Drumgoole's] jury.
>
> COURT CLERK: Case on trial continued. ADA is present. Only defendant
> Drumgoole is present before the court with his attorney.

(*Id.*)

Drumgoole's attorney questioned Lavenburg about the lighting in the hallways, his grand

jury testimony, and whether Drumgoole's hood covered his face.  (T. Tr. 115-25.)  Counsel also

asked about the racial makeup of Lavenburg's neighborhood; Lavenburg said that the

neighborhood was "somewhat mixed" with a "very small percentage" of African Americans.  (T.

Tr. 127-28.)

      iii.    *Lavenburg's Testimony Before the Petitioner's Jury*

When Drumgoole's lawyer finished cross-examining Lavenburg, Judge Harrington

excused Drumgoole's jury and brought in the petitioner's jury, giving them the following

instruction:

> Members of the jury, you may recall during jury selection and my instructions to
> you before opening statements that I mentioned that we're conducting two separate
> jury trials simultaneously, so there will be portions of the trial where for reasons of
> efficiency we conduct the trial before the two juries.  Because we are conducting
> two separate and distinct dual jury trials there will be moments when we will have
> one jury here in the courtroom and the other jury will not be and this is one of those
> moments.

(T. Tr. 139-40.)[3]  The petitioner also asked Lavenburg about the circumstances of the robbery, his opportunity to see his assailants, and the extent to which he focused on the gun rather than their faces.  (T. Tr. 153-65.)

> iv.   *Subsequent Testimony Before Both Juries*

Officer Vasquez's testimony was consistent with his testimony at the pre-trial hearing. On July 29, 2011 around 6:20 p.m., Officers Vasquez and Santana were on patrol when they received a radio call about a stolen yellow taxi.  (T. Tr. 172-73; *see also* T. Tr. 300-02, 339.)  As they were driving slowly down Albemarle Road (T. Tr. 174; *see also* T. Tr. 303), two men crossed the street in front of them.  (T. Tr. 303, 339-40.)  Moments later, Lavenburg approached their car.  (T. Tr. 174-75, 304, 331, 341-42.)  He was "shook up" and "hysterical," "waving his hands" and saying he "just got robbed."  (*Id.*)  The officers told him to get into their car.  (*Id.*) Lavenburg then explained that two black men robbed him at gunpoint.  (T. Tr. 176, 206-08, 305, 342.)  He pointed "eastbound" on East 4th Street.  (*Id.*)  The officers drove "very slow[ly]" on East 4th Street, "less than five miles an hour."  (T. Tr. 176, 342-43.)

They drove by Drumgoole's car and pulled up to a man walking on the sidewalk.  (T. Tr. 333, 343-44.)  When Lavenburg said that he did not recognize the man (*id.*), Officer Vasquez noticed Drumgoole and the petitioner sitting in the parked car behind them (T. Tr. 345-46), and put the car in reverse.  (T. Tr. 333, 345.)  Drumgoole was in the driver's seat, and the petitioner was in the passenger's seat.  (T. Tr. 177-79, 306-08.)  Although the petitioner "looked like he was leaning back" in a seat that was "reclining with him" (T. Tr. 308-309), his head was visible above the window.  (T. Tr. 309.)

---

[3] Judge Harrington gave the same instructions to Drumgoole's jury.  (*See* T. Tr. 115.)

When Drumgoole tried to drive away (T. Tr. 180, 309, 347), Lavenburg "got really excited," pointed to the petitioner and Drumgoole, and identified them as the robbers. (T. Tr. 195, 208.)[4]  At this point, less than a minute had elapsed since Lavenburg got in the police car. (T. Tr. 317; *see also* T. Tr. 336.)

As the officers approached the car (T. Tr. 209, 310, 347-48), Drumgoole "reach[ed] for something," and "lunged to the left side" under the steering wheel. (T. Tr. 180, 197.)  Officer Santana drew his gun and told Drumgoole to get out of the car (T. Tr. 181), but Drumgoole "continued to lunge and . . . mov[e] around a lot." (T. Tr. 181.)  When the petitioner put his arm between the door jamb and seat, Officer Vasquez took the petitioner out of the car, handcuffed him, and had him lie on the ground. (T. Tr. 311-12, 348-49.)  As Officer Vasquez went to help Officer Santana, who was struggling to handcuff Drumgoole (T. Tr. 181-82), the petitioner, still handcuffed, "took off" running on East 4th Street. (T. Tr. 183.)  Officer Vasquez chased him, and Lavenburg and a passer-by helped Officer Santana subdue Drumgoole. (T Tr. 183-84.) Officer Merizalde, who responded to a radio report that an officer needed assistance, also chased the petitioner.[5] (T. Tr. 452-53, 457-60.)  Officer Vasquez found the petitioner hiding behind a set of stairs near a bodega. (T. Tr. 313-16.)  Officers found Lavenburg's cell phone near the door on the passenger side of the car (T. Tr. 312, 328) and Lavenburg's wallet and keys on the driver's side floor (T. Tr. 462-63), along with the gun. (T. Tr. 294-95.)

DNA analysis established that Drumgoole was a "major contributor" of DNA on the gun, and that the petitioner's DNA was not on the gun. (T. Tr. 368-95.)  In addition, the prosecution

---

[4] According to Officer Santana, Lavenburg was definite in his identification; he did not say, "I think that may be them," or "I think those are the guys." (T. Tr. 195-96.)  According to Officer Vasquez, Lavenburg said, "I think that's them." (T. Tr. 332, 334, 336, 346.)

[5] Someone called 911 to report an assault on a police officer. (T. Tr. 71, 222-26.)

introduced four recordings of telephone conversations between the petitioner and his girlfriend while the petitioner was incarcerated at Riker's Island.  (T. Tr. 426-43.)[6]  In those conversations, the petitioner spoke about his role in the robbery, and said that he was only there to help and that Drumgoole had the gun.  (T. Tr. 217-19, 554-71, 577-81.)  He also discussed a plan to pay off Lavenburg, and gave his girlfriend Lavenburg's home address on Cortelyou Road.  (*Id.*)

After the prosecutor rested, the petitioner moved for a trial order of dismissal, claiming that there was "no evidence that shows that there was an acting in concert as to the gun."  (T. Tr. 500-01.)  Judge Harrington denied the motion.  (*Id.*)

**b.    The Defense Case**

The petitioner was the sole defense witness.  He testified that Drumgoole, whom he did not know very well, called him while he was shopping at Kings Plaza Mall.  (T. Tr. 517.) Drumgoole offered to drive the petitioner home but wanted to stop at his girlfriend's house.  (T. Tr. 517-18.)  They parked by Albemarle Road and East 4th Street (T. Tr. 533), and the petitioner sat in Drumgoole's car "just texting and making phone calls" (T. Tr. 536), while Drumgoole "basically went out" and came back a few minutes later with "another person."  (T. Tr. 519, 550.)  The other person "kept walking" when Drumgoole, who was "a little jumpy," got in the car.  (T. Tr. 519, 552.)

As Drumgoole tried to pull out of the parking space, a police car drove by and then "reversed [the] vehicle and that is when everything happened."  (T. Tr. 520.)  Drumgoole was "rocking" as the two officers got out of the car.  (T. Tr. 520, 543.)  When Officer Vasquez tried to arrest the petitioner (*id.*), the petitioner asked, "Excuse me sir, what am I being placed under

---

[6] Neither the recordings nor the transcripts were included in the record, but the parties discussed the content of the calls at length when the prosecutor moved to introduce them, the prosecutor asked about them during the petitioner's cross-examination, and the parties talked about the calls on summation. Judge Harrington also mentioned them at sentencing.

arrest for?"  (*Id.*)  The petitioner "didn't fight" and "really didn't know what [he] was being

arrested for."  (*Id.*)  Officer Vasquez handcuffed the petitioner (T. Tr. 520-21, 542), and the

petitioner heard Drumgoole drop "something heavy" (T. Tr. 544), like "keys."  (T. Tr. 546-47.)

When the officers drew their weapons (T. Tr. 521-22), the petitioner "got scared [and] startled"

and "just ran up the block."  (*Id.*)  Officer Vasquez found the petitioner and walked him back to

Drumgoole's car.  (T. Tr. 522.)

## IV.    Verdict and Post-Trial Proceedings

On October 11, 2013, the jury found the petitioner guilty of robbery in the first degree.

(T. Tr. 784.)[7]  On May 23, 2014, Judge Harrington sentenced the petitioner to a determinate

prison term of 18 years, with five years of post-release supervision.  (S. Tr. 7.)

The petitioner, represented by counsel, appealed his conviction to the Appellate Division,

Second Department.  (ECF No. 10-6 at 6.)  He argued that the evidence against him was

insufficient to prove his guilt beyond a reasonable doubt, and that the verdict was against the

weight of the evidence.  The petitioner also argued that the court should have suppressed the

evidence from Drumgoole's car because the officers did not have probable cause to arrest the

petitioner or Drumgoole.  (*Id.* at 8.)  Next, the petitioner argued that his "constitutional and

statutory right to be present" during material portions of the trial was violated when Drumgoole's

lawyer cross-examined Lavenburg while the petitioner was not in the courtroom.  (*Id.*)  Finally,

he claimed that his sentence was excessive.  (*Id.*)

On December 5, 2018, the Appellate Division affirmed the petitioner's conviction.

*People v. Quaye*, 167 A.D.3d 661 (2d Dep't 2018).  The court found that the petitioner's

---

[7] On January 9, 2014, the petitioner moved *pro se* to set aside the jury's verdict pursuant to N.Y. Crim.
Proc. Law 330.30.  *Quaye*, 2014 WL 12877324, at *1.  On May 23, 2014, Judge Harrington denied the
petitioner's motion.  *Id.*

challenge to the sufficiency of the evidence was "unpreserved for appellate review," *id.* at 662 (citing N.Y. Crim. Proc. Law § 470.05(2); *People v. Hawkins*, 11 N.Y.3d 484, 492 (2008)), and that in any event, the evidence at trial was "legally sufficient to establish the petitioner's guilt beyond a reasonable doubt." *Id.* (citing *People v. Danielson*, 9 N.Y.3d 342, 349 (2007); *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987)).  The Appellate Division also determined, based on its "independent review" of the evidence, that the verdict was not against the weight of the evidence.  *Id.* (citing *People v. Romero*, 7 N.Y.3d 633 (2006)).  The court rejected the petitioner's suppression argument, finding that Lavenburg's "identification of the [petitioner] and his accomplice as the robbers shortly after the crime, and the subsequent observations by the police of suspicious actions by the [petitioner] and the accomplice and of contraband in the vehicle they occupied" established "the legality of the police conduct and provided probable cause for the defendant's arrest."  *Id.* (citing *People v. Shulman*, 6 N.Y.3d 1, 25-26 (2005); *People v. De Bour*, 40 N.Y.2d 210, 223 (1976)).  The Appellate Division held that the sentence was "not excessive," *id.* (citing *People v. Suitte*, 90 A.D.2d 80 (2d Dep't 1982)), and rejected as "unpersuasive" the petitioner's claim that he was denied the right to be present at a material stage of the trial.  *Id.* (citing *People v. Lesley*, 128 A.D.2d 644 (2d Dep't 1987)).

On February 13, 2019, the New York Court of Appeals denied the petitioner's application for leave to appeal.  *Quaye*, 32 N.Y.3d at 1208.  The petitioner filed the petition for a writ of habeas corpus on May 21, 2019.  (ECF No. 1.)

## LEGAL STANDARD

A federal court reviewing a habeas petition must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v.*

*Thompson*, 501 U.S. 722, 729 (1991).  This doctrine applies to substantive and procedural state law grounds.  *Id*. at 729-30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus unless the state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"When a state court" "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment," "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  For example, "a state court ruling simply that a claim is 'without merit' constitutes an adjudication on the merits of that claim."  *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006).  In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent."  *Sellan*, 261 F.3d at 311-12.

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-

court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id*. at 412-13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

### I.     Sufficiency of Evidence

The petitioner claims that the prosecution did not prove his identity as one of the robbers beyond a reasonable doubt. (ECF No. 1 at 16.) The Appellate Division rejected this claim as unpreserved, and on the merits. *Quaye*, 167 A.D.3d at 662.

"[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *see also* N.Y. Crim. Proc. Law § 470.05(2). Federal courts do not "review

14

questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009). New York's contemporaneous objection rule "is a firmly established, independent, and adequate state ground that bars habeas review of the merits of a constitutional claim." *Williams v. Artus*, 691 F. Supp. 2d 515, 524 (S.D.N.Y. 2010). Because the Appellate Division rejected this claim on procedural grounds—the failure to raise a specific objection, *see* N.Y. Crim. Proc. Law § 470.05(2)—the petitioner cannot obtain habeas relief.[8] The petitioner does not demonstrate cause for the procedural default, nor would denying his claim result in a miscarriage of justice. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Parks v. Sheahan*, 104 F. Supp. 3d 271, 282 (E.D.N.Y. 2015).

Even if the petitioner's claim were not procedurally barred, it fails on the merits. A court evaluating the sufficiency of the evidence asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("In a challenge under 28 U.S.C. § 2254 to the evidentiary sufficiency of a state criminal conviction, we review the evidence in the light most favorable to the State."). The petitioner bears a "very heavy burden" convincing a federal habeas court to grant a petition on grounds of insufficient evidence. *Id.* (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

---

[8] The petitioner's lawyer moved to dismiss on a different ground than the petitioner raises in this petition. Counsel argued that the proof that he acted in concert with Drumgoole to possess the gun was insufficient.

The petitioner's guilt of first-degree robbery was established by convincing evidence. Lavenburg had an unobstructed view of the petitioner as he stood behind Drumgoole during the robbery.  When the petitioner reached with both hands into Lavenburg's pockets and took his keys and cell phone, Lavenburg looked directly at the petitioner, who looked back at him "right in the eye."  (T. Tr. 165.)  Within minutes, Lavenburg flagged down Officers Vasquez and Santana, who almost immediately found the petitioner and Drumgoole sitting in a car—the petitioner was slouching down and fidgeting as though he was trying to hide something.  The officers found Lavenburg's cell phone where the petitioner was sitting, and the wallet, keys and gun with Drumgoole's DNA where Drumgoole was sitting.  In recorded calls to his girlfriend, the petitioner admitted that he helped Drumgoole and arranged to bribe Lavenburg.

The petitioner claims that Lavenburg's identification was "unreliable."  (ECF No. 1 at 17.)  A federal habeas court reviewing a case for legal sufficiency cannot "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), or "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)).  Instead, the federal habeas court must presume that the trier of fact "resolved any such conflicts in favor of the prosecution, and must defer to that resolution," "even if it does not affirmatively appear in the record." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Virginia*, 443 U.S. at 326).

The petitioner's "weight of the evidence" claim fails for the same reasons.  (ECF No. 1 at 16.)  "Weight of the evidence" claims are state law claims not cognizable on federal habeas review. *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (noting that "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal

on appeal"); *see also McKinnon v. Superintendent*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); *Jean-Baptiste v. Artus*, No. 09-CV-5920, 2012 WL 12906287, at *14 (S.D.N.Y. June 9, 2012) (collecting cases).

**II.    The Denial of the Petitioner's Suppression Motion**

The petitioner argues that Judge Harrington should have suppressed the wallet, keys, cell phone and gun from Drumgoole's car because the police did not have probable cause to arrest him.  (ECF No. 1 at 16.)  The Appellate Division rejected this claim on the merits.  *Quaye*, 167 A.D.3d at 662.

A petitioner generally cannot raise state court's denial of a suppression motion in a federal habeas proceeding.  *Stone v. Powell*, 428 U.S. 465, 482 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  Fourth Amendment claims in habeas petitions are cognizable only "if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations," or "if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).  "Federal habeas relief is unavailable even if the federal court might have reached a different result from the state court."  *Turner v. Senkowski*, No. 97-CV-653, 2000 WL 575696, at *6 (W.D.N.Y. Feb. 17, 2000) (citing *Capellan*, 975 F.2d at 71).

The petitioner moved to suppress the evidence seized from Drumgoole's car and had a *Mapp/Dunaway/Wade* hearing on that motion.  He challenged the trial court's decision on direct appeal, and the Appellate Division rejected his claim.  Since the petitioner had a full and fair

opportunity to litigate his suppression claim, and there was no unconscionable breakdown in New York's corrective procedures, his claim is not cognizable on federal habeas review.[9]  *See Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *6 (E.D.N.Y. July 8, 2013) (collecting cases).  In any event, Judge Harrington's determination that there was probable cause for the petitioner's arrest was supported by the evidence—Lavenburg's prompt identification of the petitioner and Drumgoole within minutes of the crime, as well as evidence that the petitioner was slouching down and fidgeting in the car.  Probable cause "does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been . . . committed" by the person arrested.  *People v. Shulman*, 6 N.Y.3d 1, 25 (2005) (quoting *People v. Bigelow*, 66 N.Y.2d 417, 423 (1985)).  The officers reasonably believed that the cell phone, wallet, keys and gun, which was in plain view of Drumgoole's car, were evidence of the robbery.  *See People v. Mitchell*, 125 A.D.3d 790, 791 (2d Dep't 2015) ("The Supreme Court properly denied that branch of the defendant's omnibus motion which was to suppress [physical evidence] observed in plain view, and other evidence seized from his vehicle after a lawful traffic stop." (collecting cases)).

## III.    Right to Be Present

The petitioner argues that he had a right to be present when Drumgoole's attorney cross-examined Lavenburg in front of Drumgoole's jury.  The petitioner claims that his absence violated his "constitutional and statutory right to be present" during material portions of his trial.

---

[9] The petitioner's claim that Judge Harrington's denial of his motion to suppress was a denial of his right to "full and fair consideration," and an "unconscionable breakdown" in corrective procedures, is not persuasive.  (ECF No. 13 at 21.)  The petitioner, represented by counsel, had the opportunity at the *Mapp/Dunaway/Wade* hearing to cross-examine the prosecution's witnesses and to call witnesses, if he chose.

(ECF No. 1 at 16.)  The Appellate Division rejected this claim, finding it "unpersuasive." *Quaye*, 167 A.D.3d at 662.

The Fourteenth Amendment entitles a defendant to be present at a proceeding whenever his "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Fairey v. Tucker*, 567 U.S. 924 (2012) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934)).  A defendant is entitled "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 128 (2d Cir. 2008) (quoting *Faretta v. California*, 422 U.S. 806, 819-20 n.15 (1975)); *see also Rushen v. Spain*, 464 U.S. 114, 117-18 (1983) (describing the right to personal presence at all critical stages of the trial as a "fundamental right[] of each criminal defendant").  Nonetheless, the Supreme Court has emphasized "that this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Contreras v. Artus*, 778 F.3d 97, 113 (2d Cir. 2015) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).  Thus, "the accused has a right to be present at all material stages of trial", *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), but a proceeding is "material" for this purpose only if the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge . . . .  [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Breazil v. Superintendent Artis*, No. 15-CV-1912, 2015 WL 9581816, at *16 (E.D.N.Y. Dec. 30, 2015) (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985)).  The court must consider "whether, in light of the record as a whole . . . the defendant's presence at the proceeding in question would have contributed to his opportunity to defend himself against the charges." *Artus*, 778 F.3d at 113 (citations omitted).  There is no violation of the right to be present if the

record demonstrates "that the defendant's absence did not compromise the fundamental fairness of the trial proceedings." *Breazil*, 2015 WL 9581816, at *16 (collecting cases).

In the context of this trial—where separate juries considered the evidence against each defendant—the petitioner's rights were not violated simply because he was not present while his co-defendant's jury heard evidence.  As an initial matter, Judge Harrington did not "dismiss" the petitioner from the courtroom.  As Judge Harrington confirmed, the parties agreed that the petitioner's jury would be dismissed when Drumgoole's attorney cross-examined Lavenburg, that Drumgoole's jury would then be dismissed, and the petitioner's jury would return when the petitioner's attorney cross-examined Lavenburg.  The court did not order either defendant to leave during the other's cross examination.  Nor did counsel object on that basis.[10]  Before Drumgoole's lawyer cross-examined Lavenburg, the following exchange occurred:

> THE COURT: At this time [the petitioner] can be excused until his jury is brought back in and we will have cross-examination by Mr. Sheinberg with the orange jury.
>
> MR. SHEINBERG: Very good.  (Whereupon, [the petitioner] was hereby excused.)

Plainly, Judge Harrington did not "direct[]" the petitioner to leave with no "option of staying." (ECF No. 1 at 25.)  Rather, the court simply excused him "until his jury [was] brought back in," and he left the courtroom voluntarily.  *See Clark*, 214 F.3d at 323 ("Under federal law, a defendant can waive his right to be present at trial expressly or by voluntarily failing to appear." (collecting cases)).  The petitioner argues that he did not waive his right to be present because he was not "advised that he had a right to remain in the courtroom."  (ECF No. 1 at 25.)  But a defendant waives the right to be present "when the defendant is voluntarily absent after the trial has begun, regardless of whether the court informed the defendant of an obligation to remain

---

[10] The petitioner's claim was not preserved for appellate review for this reason.

during trial." Fed. R. Crim. P. 43(c)(1)(A); *see also United States v. Yannai*, 791 F.3d 226, 239 (2d Cir. 2015).

The petitioner did not have a right to be present when Drumgoole's attorney cross-examined Lavenburg before a different jury any more than he would have had the right to be present had Drumgoole gone to trial separately. *Cf. Fox v. Martuscello*, No. 16-CV-5416, 2019 WL 4805527, at *6 (E.D.N.Y. Sept. 30, 2019) (explaining that the state courts' determination that a habeas petitioner "did not have a constitutionally protected right to be present" when his co-defendant testified outside the presence of the petitioner's jury "was not contrary to, nor an unreasonable application of, clearly established Federal law" and not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" (internal quotation and citations omitted)).

Nor is there any merit to the petitioner's claim that he suffered prejudice because he was not present when his co-defendant's lawyer cross-examined the witness. The petitioner says that Lavenburg testified on cross-examination by Drumgoole's lawyer that he "believe[d] that Drumgoole's gun was black, which "cast[s] doubt on his unequivocal assertion at trial that he observed a black handgun." (ECF No. 1 at 24; *see also* T. Tr. 122.) In fact, Lavenburg testified that he Drumgoole was holding a "small black handgun" (Tr. 81), and that he recognized the gun when he saw it in Drumgoole's car minutes after the robbery.

Similarly, Lavenburg's statement that his memory was "better" a few weeks after the robbery did not "undermine the credibility of his trial testimony" (ECF No. 1 at 24):

Q: Would you say your memory at that time was better than it is today?

A: Yes, it was more recent.

. . .

Q: So would it be fair to say that your memory at that time was much better than it is today?

A: I just come in from outside on a sunny day.

(T. Tr. 121-22.)  Lavenburg was simply agreeing to the obvious—that a person's memory is better shortly after an occurrence than it is months or years later.

Finally, the petitioner argues that Lavenburg's testimony that African Americans constituted a "very small percentage" of his in-law's neighborhood "could have bolstered" the petitioner's misidentification defense.  (ECF No. 1 at 24.)  But Lavenburg testified that he had an unobstructed view of the petitioner when the petitioner was directly in front of him, looked him "right in the eye" and put both hands into Lavenburg's front pockets, and recognized the petitioner again minutes later sitting in Drumgoole's car.  His prompt identification, together with the additional evidence—that the gun and Lavenburg's property were in Drumgoole's car, the petitioner's attempt to escape and the recordings in which he admitted to helping with the robbery and discussed bribing Lavenburg—constituted overwhelming evidence of the petitioner's guilt.

**IV.    Sentence**

The petitioner argues that his 18-year sentence was excessive because he has "rehabilitative potential" as well as "reduced culpability" compared to Drumgoole.  (ECF No. 1 at 16.)  This claim is not cognizable on federal habeas review.  It is well-settled that "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  *Esguerra v. Cronin*, No. 21-CV-449, 2021 WL 681076, at *5 (E.D.N.Y. Feb. 22,

2021) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also Veliz v. Griffin*, No. 17-CV-0824, 2017 WL 836560, at *3 (E.D.N.Y. Mar. 2, 2017) ("[W]hen a sentence falls within the range prescribed by state law, the length of the sentence may not be raised on habeas corpus review."). The petitioner's sentence as a predicate violent felon was within the permissible statutory range for a Class B violent felony offense, which is between ten and 25 years. *See generally* N.Y. Penal Law §§ 70.02(3)(a), 70.04(3)(a), 160.15.

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus is denied in its entirety and the case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
          May 17, 2022